433 A.2d 496
**COMMONWEALTH of Pennsylvania,**
**v.**
**J. B. BATTLE, Appellant.**
Superior Court of Pennsylvania.
Argued March 19, 1980.
Filed Aug. 7, 1981.
Petition for Allowance of Appeal Denied Dec. 16, 1981.

John H. Broujos, Carlisle, for appellant.

Kevin A. Hess, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

CAVANAUGH, Judge:

The appellant, J. B. Battle, was charged with the murder of his wife, Stella M. Battle. At trial the Commonwealth proceeded solely on the lesser included offense of voluntary manslaughter. The jury found the defendant guilty of the lesser included offense of involuntary manslaughter. Post-trial motions for a new trial and in arrest of judgment were filed in the lower court and denied.

The facts of the case are essentially undisputed. Mr. and Mrs. Battle, at least for several months prior to the shooting,

had a turbulent relationship. Following her mother's death, Stella Battle had begun to drink heavily. This and her desire to drive while intoxicated became the subject of several arguments between her and her husband. According to testimony, nine days prior to the shooting an argument ensued in which Mrs. Battle, brandishing a butcher knife, chased her husband into the street. On another occasion Mrs. Battle held a gun on her husband. Mr. Battle was injured in an automobile accident and must wear a metal brace and walk with canes or crutches.

On the day of the shooting, July 15, 1978, at approximately 7:20 p. m., appellant, while alone at home, summoned the police. He sought assistance from the two police officers who arrived in dealing with his wife's drinking problem. The officers spoke to the appellant for a few minutes, then left. The police were summoned again at 7:50 p. m. By this time Mrs. Battle was at home attempting to drive off in the car. The appellant disabled the car by removing an engine coil, but not before his wife had slammed the hood of the car on his back. Throughout the incident Mrs. Battle was acting belligerently toward both her husband and the police. After the police left the scene the couple continued to argue.

According to testimony, soon after the police left both Mr. and Mrs. Battle entered the house and then reappeared outside minutes later. The appellant had armed himself with a handgun. Mrs. Battle returned to the car, insisting that her husband replace the part he removed. Appellant refused to do so. Mrs. Battle then got out of the car and walked through an alley and entered the back of the Battle residence. She surprised the appellant who was standing in the hallway near the front door. Mrs. Battle was holding a two-by-four, three feet in length, which was used to prop open the gate in the alley. A struggle ensued. Mrs. Battle struck appellant with the board, causing him to drop his canes. Appellant fired two warning shots in the air and urged his wife to stop. However, she persisted. The third and fatal shot was fired. Appellant testified that when this shot was fired he was stumbling backward trying to avoid

being hit by the board his wife was wielding. He stated that he never aimed at his wife but shot her accidently.

On appeal Battle argues that the lower court erred in refusing to admit psychological testimony offered to show whether the appellant acted out of an honest, bona fide belief that he was in imminent danger at the time the victim was killed. A review of case law leads us to conclude that the lower court was not in error.

During the trial appellant offered the testimony of Stephen B. Coslett, a clinical psychologist, to establish that at the time of the killing the appellant was acting out of an honest, bona fide belief that he was in imminent danger. Dr. Coslett had given the appellant psychological tests which are recognized in the profession; he had interviewed the appellant; and had heard much of the testimony. Counsel for the appellant proffered that, based on the history of domestic problems between the Battles and the crisis situation before the appellant at the time of the shooting, Dr. Coslett could present a conclusion as to whether appellant acted out of a belief that he was in danger at the time of his wife's death for purposes of establishing the defense of self-defense. The court refused to allow the testimony. We agree with the determination of the lower court.

In support of his contention appellant relies on *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972), and cases construing it. In *Commonwealth v. McCusker* it was held that psychiatric testimony offered to show that an otherwise intentional killing was actually committed in the heat of passion was admissible. In *Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974) the holding in *McCusker* was extended to permit psychiatric testimony to show that the defendant, charged with murder, was acting in self-defense.

Appellant claims that because the appellant offered the testimony of Dr. Coslett to show that he was acting in self-defense, *Light* is directly on point. However, whether psychological testimony is admissible to show that the shooting was accidental was addressed in *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). O'Searo was

indicted for murder and involuntary manslaughter. The death in that case occurred in a restaurant during the course of an argument among O'Searo, the decedent and a third party. O'Searo, who had earlier undergone open-heart surgery, claimed that he produced the weapon in an effort to stop the struggle that had begun and that someone grabbed his hand causing the gun to discharge accidentally. On appeal it was argued that the lower court erred in excluding the testimony of a clinical psychologist. The psychologist would have substantiated and corroborated the defendant's contention that he harbored no ill will towards the victim, that he had no intention of harming the victim, that the defendant during the scuffle became fearful of a heart attack and drew a gun in order to get the people away from him.

The court in *O'Searo* distinguished that case from *McCusker* and *Light* as follows:

> Unlike *McCusker, supra*, the testimony sought to be admitted did not touch upon the psychological likelihood of appellant's behavior under a given stimulus. Nor, did the evidence address the capacity to form the specific intent to kill. Cf. *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974). It is clear as noted by the learned court below that the only purpose of this offer was to buttress the credibility of the defendant as to his version of the critical events.

466 Pa. at 229, 352 A.2d at 32.

In *Commonwealth v. McCusker, supra*, psychological testimony would have tended to establish that appellant acted in the heat of passion. The physicians would have testified that McCusker's passion had its origin in his mental disorders as well as his recent awareness of his wife's meretricious relationship with his step-brother and her threat to retain custody of his only child. In *Commonwealth v. Jones*, 459 Pa. 62, 327 A.2d 10 (1974) it was held that psychiatric testimony as to the defendant's subnormal mental capacity was admissible in determining the voluntariness of his confession.

Relying on *McCusker* and *Jones* the court in *Commonwealth v. Light, supra,* held that psychiatric evidence is admissible to show that the defendant was operating under a bona fide belief that a felony was being committed and therefore acted in self-defense. Unlike *Jones* and *McCusker,* there is nothing in the opinion to suggest that the psychiatric testimony would establish that Light suffered from any mental disabilities. However, the Supreme Court stated, "In the instant case, the psychiatric evidence would be relevant to whether a homicide, otherwise unjustified, can be said to have been justifiable because of the defendant's fear for his life." 458 Pa. at 335, 326 A.2d at 292. Despite this the court in *O'Searo* did not permit psychiatric testimony offered to show that the defendant brandished a weapon out of fear for his life. Without the benefit of a record in either case, it is our frank opinion that there is no clear basis for distinguishing *Light* and *O'Searo.* However, because *O'Searo* is the latest pronouncement by the Supreme Court, we will follow its holding. We also note that the result reached therein is consistent with the rationale of *Jones* and *McCusker.*

 In view of the above we find that the action presented in *O'Searo* and the facts of the instant case cannot be distinguished. Here, as in *O'Searo,* psychiatric testimony was offered to show that the acts of the defendant in brandishing the weapon were motivated by fear. In both cases the defendant himself testified to the events leading up to the shooting and the fear-causing elements which prompted the production of the weapon. The psychological testimony was merely a repetition of this. As in *O'Searo* the psychological testimony was not offered to show the likelihood of Battle's behavior under a given stimulus nor to show lack of capacity to form the specific intent to kill. Rather, the testimony was offered to show that the appellant was in fact acting out of a bona fide belief that he was in imminent danger. As such the proffered testimony did nothing more than "buttress the credibility of the defendant." As the Supreme Court stated in *O'Searo*:

Traditionally, we have recognized not only the jury's ability to determine the credibility of the witnesses but also we have placed this determination within their sole province. *Commonwealth v. Hampton*, [462] Pa. [322], 341 A.2d 101 (1975); *Commonwealth v. Murray*, [460] Pa. [605], 334 A.2d 255 (1975); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972); *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972). To permit psychological testimony for this purpose would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment. Our research has failed to reveal any authority for this proposition nor has appellant been able to supply either authority for or persuasive arguments in support of such a position. We do not believe that a concept as fundamental to our law as trial by jury of one's peers can be cavalierly abandoned.

466 Pa. at 229–30, 352 A.2d at 32.

We hold that the lower court was correct in excluding the proffered testimony.

Judgment of sentence affirmed.